The clerk will call the first case. Good morning everyone. Welcome to the Illinois Appellate Court, 1st District, 1st Division. We're going to ask the lawyers who are going to argue on the criminal case to step up, introduce themselves, and tell us whom you represent. Hi, I'm Debra Noll. I represent the appellate, Stanley McDonald. Good morning, I'm Heather Flarencrote, and I represent the people of the state of Illinois. All right, thank you, counsel. Because we have two cases on the call today, we'll allow about 15 minutes for each side for main argument. We'll allow a few more minutes for rebuttal. We may change that if we have a lot of questions or if the arguments become repetitive. Please remember to speak loudly. Our microphones do not amplify, but merely record what is being said. Also, please understand we have read the briefs and are familiar with the facts of the case, so devote your time to your strongest arguments. Ms. Noll. May it please the Court, my name is Debra Noll. I represent the appellate, Stanley McDonald. And I will be arguing issues 1 and 2 today, so unless this Court has other questions, I'll stand on my briefs for the remaining issues. Stanley McDonald and his partner, Larry Gladney, had a turbulent relationship. On the day of the incident, both men were very intoxicated. Gladney had been doing cocaine and was combative. There is some evidence that Gladney initiated violence by punching McDonald, who had a cut lip and abrasions. But importantly, no one witnessed the fight. Afterward, McDonald was yelling for help and begging Gladney not to die. Contrary to the State's characterization, the stabbing was not brutal and the cause of death was misfortune. Gladney's wounds were therefore not so serious as to preclude instructions on lesser offenses. The jury therefore should have been permitted to decide if McDonald had a lesser or mitigated mental state. In the record, exactly what testimony supports your claim that this was mutual combat? Well, importantly, it's the fact that no one saw the beginning of the fight, so no one knows if they were willing. And there is some evidence that Gladney initiated violence, and there's also some evidence that McDonald had been upset earlier in the day. And based on their relationship, the jury could have found that both men willingly entered this fight. Counsel, what about... I'm sorry, go ahead. I'm going. All right, as far as mutual combat is concerned, doesn't it mean that the fight has to be on equal terms? Isn't that part of the requirements for mutual combat? And how can you say that it was on equal terms if there was a knife involved by one party? Mutual combat is a fight or struggle in which both parties enter willingly, or where two persons, upon a sudden quarrel or in hot blood, mutually fight upon equal terms. So if both people enter it willingly, I don't necessarily think it has to be on equal terms. But in this case, it was on equal terms where both men were of the same size, and although... I should backtrack and say that the jury could have found that that's the question before this court. Is there sufficient evidence in which the jury should have been permitted to decide? And here, where no one saw the beginning of this fight, we know that McDonald had a knife, but we don't know, no one knows what happened. But my question is similar to Justice Connors. Bringing a knife to a fist fight, how can you characterize that as being mutual, on mutual or equal terms? One had a knife, your client, and the victim did not. How is that equal? Because when you gave the definition, you did mention that it has to be on equal terms. If someone is fighting with his fist and his opponent is fighting with a knife, how is that equal? Well, first of all, the definition is whether both parties enter willingly, or where two persons upon a sudden quarrel or in hot blood mutually fight upon equal terms. So I contend that if both parties are willing, it doesn't necessarily need to be on equal terms. But moreover... But since no one saw the start of the fight, what supports your contention that both parties entered this mutual combat willingly? That there is some evidence, and again, I'm going to go back to the jury could have found, I'm not saying, I don't know what happened, but that there is some evidence that Gladney initiated violence by punching McDonald, and there is some evidence that McDonald... And what is that evidence that the other guy started the fight? McDonald's cousin Charlotte testified at his first trial that she believed that Gladney had started the fight by punching... And was that same evidence heard by the jury? Yes. It was introduced during cross-examination. Counsel, can I ask you, as far as the blood tests that were done on the defendant and the victim, I know the defendant was found to have... Or the victim was found to have a blood alcohol content of... I don't remember the exact number, but there was. .19. .19. Was there a cocaine test done? There was. Are the levels in the record? No, the levels are not in the record. And how about for both victim and defendant? There was no cocaine test done for the defendant, but he was very intoxicated. There wasn't a blood alcohol level. Thank you. You're welcome. So, for all... Let's see. So, mutual combat... Sorry, I was going to start with involuntary manslaughter. The other important thing regarding the mutual combat is that, contrary to the state's argument, the cuts in this case were not of the level that it was just automatically disproportionate to the offense. There were three wounds. One on the chest and one on the arm that were relatively small. The one on the face, the reason why it was so serious is because it hit the carotid artery. The medical examiner testified that this was not something that could have been predicted, that if one were to aim for the carotid artery, one would probably go for the neck. But there were multiple stab wounds, I believe four. Does that negate some of your argument that it wasn't intentional? I mean, you don't accidentally stab somebody four or five times, do you? There were three stab wounds. And I'm not arguing that it was accidental, but that there was some evidence in which the jury could have found a lessened mental state. The jury could have found either recklessness or a mitigated state so that he acted out of passion and provocation. What about all the earlier comments of your client earlier in the day that he planned to kill the victim? As I argued in my briefs, those comments created a question of fact for the jury as to intent. People commonly say words like, I'm going to kill you, and they don't necessarily mean they're literally going to kill someone. And indeed, earlier in the day when Gladney came home, there was no physical violence. Again, there was a threat, but there was no physical violence. So this presented a question of fact that should have been brought to the jury. What's your take on the comment made by your client when the police came and he said, somebody stabbed Larry? What do you make of that? The jury could have found that that was simply someone speaking in shock. His actions after the incident were certainly not that of a cold-blooded killer, someone who had the mindset of quickly making up a defense. He was extremely intoxicated, clearly upset. He was screaming out for help and begging Gladney not to die. So I think that the jury could well have found that that comment was his own defense mechanism. I can't believe that this happened. I can't believe not someone who was deliberately setting out to murder his partner, who he loved. All of this evidence also is sufficient to justify involuntary manslaughter instructions. Involuntary manslaughter requires a reckless state of mind, which is conscious disregard of a substantial and unjustifiable risk that actions will cause death or great bodily harm. In contrast to intentional or knowing murder, which requires intent to kill or do great bodily harm, or knowing that acts create a strong probability of death or great bodily harm. Counsel, there was no post-trial motion on this issue, was there? No, ma'am. So we're looking at plain error here. Or ineffective assistance of counsel for not preserving the issue. Okay. Here, in order to make this determination, courts consider all of the facts and circumstances, particular focus on three factors. The severity of the injuries, the disparity in size, and whether the defendant used a weapon. And here again, contrary to the state's characterization, the injuries in this case were not of the sort that would automatically preclude instructions on involuntary manslaughter. There were three stab wounds, two of which were very superficial. And this was a big knife. It was a butcher knife. Yet it went in one inch on each of the arm and the chest, and a two-inch cut on the face that did not even go all the way through the carotid artery. It went three-quarters of the way through, which is horrifying. Yet it's not so brutal as to automatically preclude the jury from being able to consider whether these actions were reckless. So this factor goes in favor of involuntary manslaughter instructions. The disparity in size, the two men were almost the same size. Gladney was younger than McDonald. So this factor, again, weighs in favor of involuntary manslaughter. Now, you seem to have a disagreement with the state about the standard of review under jury instructions. And you believe it's de novo. I do. And why do you believe that? And why do you believe I think Washington is a case they cite doesn't apply? I cite Washington, and Washington is the more recent case. And Washington held that, or didn't really hold it. It said, quote, the question of whether sufficient evidence exists in the record to support the giving of a jury instruction is a question of law subject to de novo review. That's a 2012 case. The state relied on People v. Austin, which is a, I think it's from 1989. So the Supreme Court has clearly held since Austin that the proper standard of review is de novo. Is it a clear holding on point, or is the Supreme Court just sort of is all over the map and hasn't gravitated toward a single test yet? It's a one-sentence line without analysis. So I wouldn't say it's all over the map. And I would say it's clearly on point because that's a case involving lesser instructions. Counsel, in that case, the appellate court used the abuse of discretion standard, and the Supreme Court used the de novo standard. Is that right? I am horrified to admit that I didn't. I think they did. And in Washington, the Supreme Court didn't overrule the prior standard. It just makes the statement that it's de novo with no analysis. It makes sense that the standard is de novo because the question of whether there's sufficient evidence in the record to justify the giving of an instruction is a question of law. And it is well settled that all purely legal questions are reviewed de novo. So in that sense, I think the Supreme Court was probably clarifying some confusion. It's not the trial court's job to make factual findings as to whether the evidence is sufficient to justify an instruction. Thus, it would not make sense to give the court discretion on that question. Returning to the involuntary manslaughter instructions, the final factor is whether the defendant used a weapon. Here, that factor does weigh against instructions. But that factor alone is not determinative. Courts consider all of the surrounding circumstances. And here, the surrounding circumstances are clearly enough from which a reasonable jury could have found that McDonald disregarded a substantial and unjustifiable risk that his actions would cause death or great bodily harm, not that he intended or knew that his actions would cause death. So for all of these reasons, I would ask that this court reverse and remand for yet another trial. And I'll reserve my remaining time for about all. Thank you. Thank you. Ms. Fahrenkrug? Good morning, Your Honors. May it please the Court. Heather Fahrenkrug here on behalf of the people. I'd like to clarify two points right off the bat, please, Your Honors. First of all, there was no punch. There was never any testimony or any evidence that there was a punch. The testimony of Charlotte Davis before the grand jury was that the victim hit out. Hit out. And the reason this is significant is that it's accurate with what she saw. Which is my second point to clarify. There was an eyewitness. Charlotte Davis was an eyewitness to this murder. She heard the two arguing.  There was a light over the steps of the basement. Ms. Fahrenkrug, is that true? I mean, somebody actually saw the stabbing? Is that what you're saying? Her testimony was that she stepped out. She could see the defendant at the bottom of the steps where the door entered into their living area, pulling the bike. She saw Larry. I read all of that. What I want to know is are you saying somebody actually saw the stabbing? Yes, Your Honor. Yes, I am. And here's why. Her testimony was that the defendant was pulling the bike and he was holding the butcher knife. Her testimony was that Larry had nothing in his hands. He was pulling the bike back and he said, don't mess with my bike. And then she heard, oh! And she looked and saw the victim cover his face. She saw blood everywhere. He ran up the steps, ran past her. The defendant ran up the steps and ran past her. She saw the whole thing. She saw the whole thing. And her testimony was the defendant... You are saying to me that her testimony is that she saw the stabbing? Is that what you're saying? Well, she was looking down the steps. Her testimony was that she was looking down the steps and she saw the struggle of the bike. She saw Larry with... She saw the defendant holding the knife. Ms. Barencroft, I'm asking you a direct question and I would like a direct answer. Is there anything in the record that suggests that somebody saw when this victim was stabbed? Yes or no? Yes, Your Honor. Yes, Your Honor. She saw the two... Okay, you can go on. Okay. So those two points I wanted to clarify. Counsel, let me ask you about the medical examiner's report as far as the injuries on the victim. Yes. Stab wounds. Were there other injuries as well? I'm sorry, on... On the victim. On the victim. The victim didn't have any defensive wounds and that's also significant here. I think the medical evidence tells the story here. Nothing else to the face other than the stab wound? No. No, he did not. He had three stab wounds once, twice, three times through the cheekbone into the carotid artery almost completely severing it. And those injuries absolutely refute involuntary manslaughter instruction here. Those injuries show that this wasn't reckless conduct. At the very least, the defendant wanted to injure the victim here. So that medical evidence is significant. When counsel argued that the injuries were not so brutal I would argue that the force required and the downward motion of a jab through the cheekbone into the neck to sever the carotid artery would be quite brutal. There's a reading of this testimony that suggests it's just a lucky hit. And why isn't that a question for the jury? The evidence did not rise to the level there was not a scintilla of evidence to support giving this provocation instruction and here's why. The cases Austin and Young and Sutton that I cite in my briefs are exactly on point with this case. When one person has a deadly weapon and the other person has nothing provocation instruction is not warranted. And that's exactly what happened here. In those cases there was actually a fight. There was a struggle. But in our case the victim is pulling his bike away hitting out in a defensive way to get away from the defendant. Lawful force to defend his property. Defend himself when this knife comes down into his face. Let me ask you another question. Did anyone see how the struggle began? Charlotte Davis' testimony was that she heard the victim come home and she heard them start to argue. That's not my question. Did anyone witness how the struggle began? Charlotte Davis' testimony Did anyone see it with their eyes? Who hit first and how the struggle began? Did anybody see that? Was there any testimony that went to that point? No, Your Honor. Charlotte Davis came out after she heard them arguing when they were on the stairs. And that's where the struggle over the bike happened and that's where the stabbing happened. How do you reconcile that with that it was not mutual combat? Nobody saw how it started or whether the victim actually threw the punch first. How do you know whether it was mutual combat or not? Because, Your Honor, what Charlotte Davis did see was the victim pulling his bike away. But by that time they were already engaged in whatever they were doing. So let's say hypothetically that the victim somehow engaged and provoked the defendant first before she saw anything. She comes out and now he's pulling away from the defendant. He's trying to get away from the defendant. Let's say that happened. Still, under the case law, under Austin, under Young, under Sutton, because the victim did not have a deadly weapon, because the victim had nothing in his hands but pulling his bike away, this does not warrant a provocation instruction here. And even if we go beyond that, the fact that one party has a deadly weapon and one party doesn't, the response was absolutely out of proportion. If we pretend that there was some sort of a hit, something that the victim did here to provoke the defendant, stabbing him three times would be absolutely disproportionate. And that's exactly what happened in Austin. So as far as what the burden is on the defendant to provide evidence that that instruction should be given, is that by a preponderance or do they have to show scintilla? Scintilla. And the trial court made a very solid record here. The trial court went on for a whole page that the evidence was uncontradicted, unrebutted, even undenied. The defendant is walking around all day with a butcher knife talking about what he's going to do with the victim. And this is another significant point that goes to both jury instructions. The defendant told Charlotte Davis I'm going to kill Larry when he comes home. He told Calvin Holliday, I'm going to kill Larry when he comes home. When Larry came home at 4 o'clock he pointed the knife at Larry and said I'm going to kill you today. These actions of defendant when the court is looking at the evidence and deciding to give this instruction are very significant. This wasn't a heat of the moment, a spontaneous argument that happened between these two men where there was a knife that was being scuffled. Every case the defense relies on there is a scuffle over a knife or there are two knives. Completely different factual situation than what happened here. Back to Justice Delort's question. Isn't there sufficient support in the record that this may have been a lucky hit? There were three stab wounds and two of them were quite superficial and the one that went through his face that severed that went through the carotid artery that there was some testimony that had the defendant been aiming for the carotid artery. He would have stabbed the victim in the neck, rather it was in the face. Would that constitute reckless conduct or do you think that that shows that he was definitely intending to kill this victim? I think the intentional nature of a downward forceful jab of the butcher knife through the cheekbone Well if you're stabbing I mean we're splitting hairs here but if you're stabbing wouldn't it naturally be a downward motion? I mean how else would you stab someone? No Your Honor, there are cases where recklessness is found when there's a slice, there's a fight there's a back and forth with a knife this is very different in the neck area or the face area than this. I think that the medical testimony here at trial that the jury heard were the back to the original question wouldn't that be something for the jury to decide? Not unless there's enough evidence to support giving the instruction and the trial court's job and the standard here is absolutely abuse of discretion and the trial court acted within its discretion and looking at the evidence and deciding first if there's enough evidence to support giving this instruction and there was not. Washington does not apply here because Washington talked about the self-defense instruction and the court said in Washington if you're going to give self-defense you've got to give the mandatory counterpart which is second degree unreasonable belief. The jury has to decide that question. That's the holding of Washington. Washington does not apply here. The rationale doesn't apply here. What about the standard of review that they say in Washington is de novo? It's de novo in that case because the giving of the self-defense instruction requires the giving of the unreasonable belief in self-defense instruction because that's the last question for the jury. That issue of law is to be reviewed de novo. That rationale doesn't apply here. This is abuse of discretion standard and the court... Washington doesn't apply here because what? Because that case dealt with the self-defense instruction. If the trial court is going to give self-defense, the trial court must give the mandatory counterpart which is the unreasonable belief in self-defense of second degree murder, that question goes to the jury to decide whether the defendant in a hypothetical case is acting reasonably or unreasonably. You glean that from Washington. The Supreme Court doesn't say that. That's the rationale that I read from Washington. Okay. Thank you. It doesn't apply. Second degree provocation is different from second degree unreasonable belief in self-defense. It's different. In just concluding on the involuntary manslaughter instruction, the defendant here voluntarily and willfully committed this act, that's the question, that had a natural tendency to cause great bodily harm at the very least. So maybe it's a lucky shot that he hit the carotid artery, but he certainly was trying to harm the victim. Oh no. All right. Court's going to be in recess for a few minutes, so we are expecting a fire drill today, but it's supposed to be this afternoon. So let's see if we need to move out of the room or not. All right. So counsel, just have a seat. Okay. Our drill was not supposed to be until this afternoon. All right. Thank you. Go ahead. Feel free to pause while the alarm is blasting. Did that interrupt your train of thought? You know what? I have young children, so it's hard to tell me. All right. Give it a try. One last point, Your Honors. Counsel didn't touch on this, but because of her strong language in her reply brief, I would like to very briefly touch on the rebuttal evidence that was entirely proper in this case. We put on a rebuttal witness to rebut the evidence the defendant put on in his case in chief, which is entirely proper, and I want to just What did his testimony rebut? What? The evidence that the defendant put on in his case in chief was that there were injuries to him, the defendant, that would give some evidence to support self-defense. Or mutual combat, right? That the victim was combative when the ambulance came, and then Detective Todd Pierce testified about where the fight occurred and where there was blood spatter. And this evidence, the court found, rose to a scintilla and gave the defendant self-defense instructions, both reasonable and the mandatory counterpart unreasonable. So the jury had that issue before them. Our duty is to rebut that. Our duty is to rebut self-defense when the defense raises that issue, which they did in their case in chief. And that statement, somebody stabbed him, goes directly against the idea that he was acting in self-defense. And to that note, even if this court were to find that the court, that the trial court, erred in not giving these instructions, there was no prejudice to the defendant here, because this was not an all-or-nothing trial. The jury got instructed on self-defense and on the unreasonable belief in self-defense, and they did not go for it. They found this defendant... In conclusion, the trial court did not abuse its discretion, where there was no evidence to support these instructions. The defendant received a fair trial. We ask this court to affirm the conviction of murder. Thank you. Ms. Knoll, reply. Just a few points. First, as the State conceded, no one saw how the struggle began, how the fight began. Therefore, young Austin Sutton, do not automatically preclude instructions. Rather, Leonard and Robinson apply, because no one saw what happened. It was a question of fact that should have been submitted to the jury. Regarding the trial court, it made improper factual findings, which, even if reviewed for abuse of discretion, which I absolutely do not think it should be, there is necessarily an abuse of discretion if the... if there is sufficient evidence and the trial court denies instructions. And Washington was not limited to self-defense. Washington said that if the question of whether there is sufficient evidence in the record is a question of fact to be reviewed de novo. And the fact that, you know, I'm sorry, a question of law. And questions of law are always reviewed de novo. That's well settled. And finally, regarding the rebuttal issue, rebuttal evidence is limited to evidence, and the State had an opportunity to present any rebuttal to self-defense in its case in chief. It did not do so. The way it chose to introduce that evidence was clear gamesmanship that shouldn't be tolerated. Thank you very much. Any questions from the panel? If not, thank you very much. This case will be taken under advisement, and we'll pause for a moment to allow the attorneys for the other cases to step up.